UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | |
| | ) | Docket No. 21-cr-10051-MLW |
| MANUEL SANTANA VIZCAINO, | ) | |
| a/k/a, "Dave," | ) | |
| | ) | |
| Defendant | ) | |

## GOVERNMENT'S TRIAL BRIEF

The United States of America hereby submits the following information for the Court's consideration in preparing for and conducting the upcoming trial in this matter.

1. Summary of Government's Case

(Count One) September 3, 2020: Controlled purchase of 276 grams of fentanyl from the

defendant

On August 25, 2020, FBI investigators stopped an individual leaving the area of 18 Swan Street in Lawrence. Investigators seized approximately 270 grams of fentanyl from this individual. This individual will hereinafter be referred to as the cooperating witness ("CW"). The CW stated that he purchased fentanyl from "Dave," who used telephone number (978) 242-5981 (the "5981 Phone"). The CW further detailed that he had been purchasing 250-290 grams of fentanyl weekly from "Dave" for the past two months. The CW cooperated in exchange for not being charged with the fentanyl seized from him that day.

On September 3, 2020, FBI investigators worked with the CW to conduct a controlled purchase of fentanyl from "Dave." At the direction and under the supervision of investigators, the CW arranged to meet "Dave" through a series of text messages with the 5981 Phone. The text

messages between the CW and "Dave" are in English and were photographed by agents. Prior to the controlled purchase, the CW and the CW's vehicle were searched for contraband with negative results.

After the text messages to the 5981 Phone, investigators provided the CW with $7,500 of official agency funds for the controlled purchase of fentanyl. Investigators also equipped the CW with an audio and video recording and surveillance device. Investigators live-monitored this device during the controlled purchase. Investigators then followed the CW to 18 Swan Street in Lawrence and surveilled him walk up the stairs at the rear of the building, which led to the second-floor apartment. Outside the second-floor apartment, the defendant greeted the CW. A surveillance officer observed the defendant meet the CW outside the second-floor apartment. This was also recorded on video. Inside the kitchen, the CW handed the defendant the $7,500 of official agency funds. The defendant took the money but did not count it. The defendant offered the CW a drink of guava juice in the kitchen. The defendant then walked into a back bedroom. The defendant returned and provided a cut guava juice box to the CW and told the CW, "In here is one and a half, free from me, 26 and a half." The CW then left the apartment and met with investigators.

The CW provided investigators with the guava juice box, which contained 26 and one half compressed cylinders of a brown powdery substance wrapped in wax paper. Investigators then searched the CW for contraband and money with negative results and retrieved the audio and video equipment. The substance was tested at the DEA Laboratory and confirmed to be 276.3 grams of a substance containing fentanyl.

Investigators then researched the 5981 Phone and discovered that the defendant was stopped on August 21, 2020 and associated with that telephone number. On August 21, 2020, Massachusetts State Police troopers observed a hand-to-hand drug transaction between the

defendant and another individual. Troopers were familiar with the defendant because he had been arrested in 2017 in possession of narcotics and indicted for possession with intent to distribute controlled substances. At the time of the stop, the case was pending in the Essex County Superior Court.[1] Troopers followed the defendant and stopped him. The defendant had no drugs in his possession or his car. Troopers observed a slip of paper with the 5981 Phone number written on it. The troopers photographed the slip of paper, the defendant, his vehicle, the locked screen of his phone, and cash on the passenger seat. The defendant was then released from the scene. Through this research, investigators identified the defendant as "Dave," who sold the fentanyl to the CW on September 3, 2020.

<u>(Count Two) September 14, 2020: Controlled purchase of 257 grams of fentanyl from Santo</u>

<u>Santana Vizcaino ("Santo")[2]</u>

On September 14, 2020, FBI investigators worked with the CW to conduct another controlled purchase of fentanyl. At the direction and under the supervision of investigators, the CW arranged to meet "Dave" through a series of text messages to the 5981 Phone. These text messages are preserved.  Prior to the controlled purchase, the CW and the CW's vehicle were searched for contraband with negative results.

After the text message exchange, investigators provided the CW with $7,500 of official agency funds for the controlled purchase of fentanyl. Investigators also equipped the CW with an audio and video recording and surveillance device. Investigators live-monitored this device during

---

[1] The government does not intend to offer evidence of this 2017 arrest, but provides it as context to the Court. Discovery related to this 2017 arrest has been provided to the defense.

[2] As the Court can recall, the co-defendants are brothers. For clarity, the government refers to Santo by his first name.

the controlled purchase. Investigators then followed the CW to 18 Swan Street and surveilled him walk up the stairs at the rear of the building, which led to the second-floor apartment. The CW walked into the kitchen. Inside the kitchen, the CW greeted Santo and handed him the $7,500 of official agency funds. Santo counted the money at the kitchen table, captured on video. Santo then handed the CW a black plastic bag. Santo informed the CW, "Complete." Santo then stated, "Dave is in Santo Domingo."[3] Santo Domingo is the capital of the Dominican Republic. Following the controlled purchase, investigator learned through a Homeland Security record that the defendant boarded a flight to the Dominican Republic on September 9, 2020. The CW had never met Santo prior to this controlled purchase. The CW then left the apartment and met with investigators.

The CW provided investigators with the black plastic bag, which contained 26 compressed cylinders of a brown powdery substance wrapped in wax paper. Investigators then searched the CW for contraband and money with negative results and retrieved the audio and video equipment. The substance was tested at the DEA Laboratory and confirmed to be 257 grams of a substance containing fentanyl.

On the same day, FBI agents conducted a photographic identification procedure with the CW, using an eight-photo array. The photo array was presented in sequential order and the CW identified a photograph of the defendant as the person he knew as "Dave." The CW notated on the photograph of the defendant, "Dave, I've dealt with him in the past."

Upon a review of the defendant and Santo's social media pages and the video recording of the controlled purchase on September 14, 2020, investigators identified Santo as the defendant's brother and the individual who sold fentanyl to the CW that day.

---

[3] The government intends to file a separate motion in limine to admit the recordings of the controlled purchases, including these statements by Santo, the defendant's co-conspirator.

A still image from the September 3, 2020 recording depicts the defendant wearing a red and white necklace and earrings. Upon the defendant's arrest on December 6, 2020, agents removed a red and white beaded necklace and yellow metal earrings from the defendant. This jewelry and other items were returned to defense counsel and documented in writing by agents.

2.  <u>Stipulations of Fact</u>

The parties will stipulate that the defendant was in the Dominican Republic from September 9, 2020 until September 20, 2020.

The defendant presently does not stipulate that the drugs purchased by the CW on September 3, 2020 and September 14, 2020 contain fentanyl or the weight of those drugs. If the defendant subsequently stipulates, the parties will advise the Court.

3.  <u>Anticipated Evidentiary Issues</u>

a.  *Recordings*

The government anticipates introducing excerpts of video recordings of the controlled purchases. The government has prepared excerpts that remove periods of time that the cooperating witness is driving to and from the deals in order to avoid needless waste of time. These videos also contain statements by the defendant and his co-conspirator Santo Santana Vizcaino. The government intends to introduce the recordings through a law enforcement witness who monitored these recordings live and is familiar with their preservation. Federal Rule of Evidence 901(b)(1).

b.  *Expert Testimony*

Absent stipulations, the government intends to introduce evidence from DEA chemists regarding the fentanyl purchased by the cooperating witness and the weight of those drugs. Under Fed. R. Evid. 702, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified to appear as an

expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise" as long as the information is reliable.  Courts considering such evidence have consistently "emphasized the fact that expert testimony is admissible where the inference that are sought to be drawn are inferences that a jury could not draw on its own" or even where "the subject looks like one the jury understands from everyday life, but in fact, the inference the jury might draw are erroneous." *United States v. Hines*, 55 F. Supp. 2d 62, 64 (D. Mass. 1999).

      *c.   Lay Opinion Evidence*

Because "[l]ay jurors cannot be expected to be familiar with the lexicon of the [drug] community," law enforcement officers may testify as to the meaning of various instances of coded language heard on the recordings, such as the defendant's statement, "In here is one and a half, free from me, 26 and a half," referring to 26 and a half "fingers" of fentanyl, a common way of packaging fentanyl for distribution. *United States v. Tejeda*, 886 F.2d 483, 486 (1st Cir. 1989) ("clearly permissible" for agent to testify about "the meaning of coded or slang words" in drug cases and noting that "many courts have allowed experienced agents to testify as to the interpretation of drug codes and jargon"); *see also United States v. Santiago*, 560 F.3d 62, 66 (1st Cir. 2006) (undercover agent's testimony about the meaning of code words or phrases used to designate drug quantities was properly admitted as lay opinion testimony).  While the government believes this testimony is properly viewed as lay opinion evidence, it also believes that any such witness's training and experience (to be established at trial) qualify him as an expert witness. *Santiago*, 560 F.3d at 66 ("Testimony about coded language . . . can be admissible, depending on its content and other circumstances, either as lay or expert testimony"); *see also United States v. Grullon*, 545 F.3d 93, 95 (1st Cir. 2008) (allowing lay witness testimony of co-conspirator as to the meaning of coded drug talk).

4.  Voir Dire and Jury Instructions

The government will file its proposed voir dire questions and proposed jury instructions today pursuant to the Court's pretrial order. The government does not anticipate any uncommon requests in this area.

5.  Special Arrangements

a.  *Paralegal*.  The government respectfully requests that, in addition to trial counsel, the Court allow Megan Massey, a paralegal from the United States Attorney's Office, to sit at counsel table.  Ms. Massey is an integral member of the prosecution team and will assist the undersigned counsel in efforts to introduce the physical evidence, video recordings, and photographs in this case.

b.  *Witnesses*.  Some of the government witnesses are coming from out of state. Depending on witness schedules and the actual date that testimony begins, the government may request that certain witnesses be allowed to testify out of order.

c.  *Length of Trial*.  The government expects its case-in-chief to last two days, excluding jury selection.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:      */s/ Philip C. Cheng*
Philip C. Cheng
Assistant United States Attorney

7

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>*/s/ Philip C. Cheng*</u>
Philip C. Cheng
Assistant U.S. Attorney

Dated: January 28, 2022

8