UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>    v. )<br>)<br>MANUEL SANTANA VIZCAINO, )<br>    a/k/a, "Dave," )<br>)<br>    Defendant )| Docket No. 21-cr-10051-MLW |

**GOVERNMENT'S MOTION IN LIMINE CONCERNING THE ADMISSIBILITY
OF RECORDINGS OF CONTROLLED PURCHASES OF FENTANYL**

The government anticipates that it will introduce recordings from the controlled purchases of fentanyl on September 3, 2020 and September 14, 2020. The September 3, 2020 recording depicts the defendant meeting with the cooperating witness ("CW") in the kitchen of 18 Swan Street in Lawrence. The second set of recordings depicts the CW meeting with co-conspirator Santo Santana Vizcaino ("Santo")[1] on September 14, 2020, also in the kitchen of 18 Swan Street in Lawrence.[2]

<u>September 3, 2020 recording with the defendant</u>

In the September 3, 2020 recording, the defendant greeted the CW at the apartment door. The defendant's face and body are seen on the recording. The defendant obtained an empty plastic

---

[1] As the Court can recall, the co-defendants are brothers. For clarity, the government refers to Santo by his first name.

[2] As stated in the government's trial brief, the government intends to admit abbreviated versions of the recordings that excise the CW driving to and from 18 Swan Street. The government intends to admit two videos of the September 14, 2020 purchase because they capture different angles. One of the videos captures a better image of Santo counting money and the second captures Santo provide the CW with a black plastic bag, which contained fentanyl. The second video also abruptly ends before the CW leaves the apartment.

1

bottle from the CW and discarded it in a bin outside the apartment door. A surveillance officer will testify that he observed the defendant through a monocular at this moment.

In the kitchen, the CW asked the defendant, "You drink those a lot? Guava, right?" The defendant responded "Yeah." This adoption is relevant because later in the video, a sound consistent with cutting a juice box is overheard in the recording. The CW later provided agents with the fentanyl contained in a cut guava juice box.

The defendant later stated, "In here is one and a half, free from me. 26 and a half." When agents examined the drugs the CW purchased from the defendant, the package contained 26- and one-half cylinders of fentanyl. These cylinders of 10 grams each are a common packaging for fentanyl and referred to as "fingers." This recording is admissible as a statement of a party opponent. Fed. R. Evid. 801(d)(2)(A).

September 14, 2020 recording with the defendant's co-conspirator

In the September 14, 2020 recordings, the CW walked into the kitchen of 18 Swan Street and is greeted by the defendant's co-conspirator Santo.[3] There is little conversation between the CW and Santo because it appears that Santo speaks limited English and the CW speaks limited Spanish. In the recordings, Santo can be seen counting money at the kitchen table. At the end of the deal, Santo told the CW, "Complete." He then also stated, "My friend. Dave is in Santo Domingo." The CW replied, "Ok. I didn't really want to say anything… alright cool… Call like next week, like usual?" Santo replied, "Okay."

The statements by Santo are admissible as co-conspirator statements. Fed. R. Evid. 801(d)(2)(E). See United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977). A statement falls

---

[3] The government intends to redact the image of a child who is briefly seen walking through the kitchen in one of the videos.

under this exception to the hearsay rule if it is "more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that statement was in furtherance of the conspiracy." These requirements are satisfied with the September 14, 2020 recordings. The September 14, 2020 deal was arranged using the same telephone number as the deal with the defendant on September 3, 2020. The deals both happened inside 18 Swan Street. The co-conspirators are brothers and known to one another. Santo referred to the defendant by his alias, "Dave." The drugs from both deals were packaged as "fingers." Lastly, Santo assured the CW that he could call again next week, like usual, to continue the drug distribution conspiracy.

Further, it is not required that a conspiracy be charged for statements of a co-conspirator to be admissible. See United States v. Washington, 434 F.3d 7, 13 (1st Cir. 2006) ("'It is well established that the applicability of the "co-conspirator" exception to the hearsay rule is not conditions on the presence of a conspiracy count in the indictment. Rather, the out-of-court statements of one "partner in crime" will be admissible against a confederate when made in furtherance of a joint criminal venture and when there is sufficient evidence independent of these statements to indicate the existence of such a venture.'") (citation omitted).

Santo's statement, "Dave is in Santo Domingo," is separately admissible not only for the truth of the matter asserted but also to provide context to the meeting. See, e.g., United States v. Santiago, 566 F.3d 65, 69 (1st Cir. 2009); United States v. Walter, 434 F.3d 30, 34 (1st Cir. 2006); United States v. Cruz-Diaz, 550 F.3d 169, 178 (1st Cir. 2008). The CW had never dealt with Santo prior to the September 14, 2020 controlled purchase. By telling the CW that "Dave is in Santo Domingo," Santo assured the CW that the fentanyl distributed by Santo was from the same stock and reliability as the CW had come to expect from the defendant, his more regular drug dealer. The statement explained to the CW why the defendant was not present on September 14, 2020.

Santo further assured the defendant that he could continue buying drugs from the defendant by contacting the same telephone number because they were working in the same drug conspiracy.

<u>The recordings are admissible pursuant to Fed. R. Evid 901</u>

Federal Rule of Evidence 90l(a) provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "The rule does not erect a particularly high hurdle. 'If in the court's judgment it seems reasonably probable that the evidence is what it purports to be, the command of Rule 901(a) is satisfied and the evidence's persuasive force is left to the jury.'" <u>United States v. Ortiz</u>, 966 F.2d 707, 716 (1st Cir. 1992) (citation omitted).

The government intends to admit the recordings through Special Agent Dustin Poulin, who is familiar with the activation, monitoring, retrieval, and preservation of these recordings. Agent Poulin was present during the controlled purchases and live-monitored the recording device. Following the controlled purchases, Agent Poulin secured the recordings from the CW, reviewed them, and then preserved them in evidence. The government anticipates that Agent Poulin will further testify that the trial exhibits are true and accurate copies of the recordings made during the controlled purchase. The government also intends to admit still images from the September 3, 2020 recording and that Agent Poulin could similarly testify that those stills are true and accurate images from the recording.

        Respectfully submitted,

        RACHAEL S. ROLLINS
        United States Attorney

By:   <u>/s/ Philip C. Cheng</u>
       Philip C. Cheng
       Assistant United States Attorney

Dated: January 28, 2022

## CERTIFICATE OF SERVICE

    I hereby certify that this document will be filed via ECF and thereby served on counsel of record.

                                                   /s/ Philip C. Cheng
                                                 Philip C. Cheng
                                                 Assistant U.S. Attorney

Dated: January 28, 2022

Case 1:21-cr-10051-MLW   Document 70   Filed 01/28/22   Page 5 of 5